Smith, J.
The first question which we will consider in this case is, whether the trial court.properly overruled the challenge for cause interposed by the defendant to Mr. Heidcamp, who was examined on his voir dire as to his competency as a juror therein, and who was accepted as such by the court, and sat in the trial of the case; and in refusing to allow him'to answer a question put to him by defendant’s counsel as to his competency. If the court did err as to its rulings as to these matters, or either of them, it must be deemed to be *209 prejudicial to the rights of the defendant below, for at that time he bad exhausted his peremptory challenges, and he was thus compelled to accept this juror as one of his triers. If he was not an impartial juror, the constitutional and statutory rights of the defendant have been infringed by this action of the court.
Sec. 7278, Rev. Stats., provides as to what shall be good cause for challenge to any person called as a juror on any indictment. One of those grounds is:
“That he has formed or expressed an opinion as to the guilt or innocence of the accused; but if a juror has formed or expressed an opinion thereon, the court shall thereupon proceed to examine such juror on oath, as to the grounds of such opinion,and if such juror shall say that he believes he can render an impartial verdict notwithstanding such opinion, and if the court is satisfied that such juror will render an impartial verdict on the evidence, he may admit him as competent to serve in such case as a juror.”
It is apparent from this language, that if a person called as a juror has formed or expressed an opinion as to the guilt or innocence of the accused, he is incompetent to sit on such trial, unless the other requirements of the statute are complied with, and if on an examination by the court, (or in its hearing by counsel, which we suppose is equivalent thereto), as to the grounds of his opinion, he,the juror, is able to say that he believes he will be able to render an impartial verdict, notwithstanding his present opinion, and convinces the court of that fact, he may be competent.
In the case at bar, Heidcamp was asked if he remembered reading of this case in March last,and answered that he did. He was then inquired of by the Prosecuting Attorney,“from what you then read,did youthen form or express an opinion as to the guilt or innocence of the defendant Limerick;” and he answered that tie did, and still had that opinion. Thereupon the court put this question to him: “Notwithstanding that opinion,if you were accepted as a juror, would *210 you'render a fair and impartial verdict according to the law and the evidence?” And he answered, “Yes, sir.” The court then asked this question: “Would you set aside any predelictions you had one way or the other, and rely upon the "'testimony of the witnesses adduced in this trial only, and the charge of the court as you heard it, and render your verdict upon both, and upon them only?” The answer to this was, “I have my mind fixed.” The court then put this question: — “I say, would you put aside any opinion or any notion that you now have concerning the case, and according to your, oath and obligations as a naan, would you determine this case according to the testimony of the witnesses, and according to the law as I should give it to you?” The answer was, “Yes, sir.”
Thereupon the examination was resumed by Mr. Darby. Up to this time, there had been no statement by the witness that he believed that he could render an impartial verdict in the case notwithstanding his present opinion, but in answer to che Prosecuting Attorney, he substantially does so. On cross-examination by counsel for the defendant, be again testifies that he "had at that time an opinion as to the guilt or innocence of the defendant,and he was then asked,“How much evidence would it take on the part of the State, or on the part of the defense, to remove that opinion, and leave your mind a blank upon the question whether he is guilty or innocent?” This was objected to by the counsel for the State, and the objection was sustained, and counsel for defendant excepted. After some other questions the answers to which were ‘not cleár and explicit, except to the point that he still has his opinion, he was asked, “At what time during the progress of the trial will you throw that opinion to one side, and become an unprejudicial and unbiased juror?” His answer was, “I will hear both sides,and then I will render my thoughts.” Question: — '“You mean that you will carry the opinion with you until you have heard *211 the evidence on both sides?” Answer:- — -“Yes, sir.” — He was then challenged for cause, and the court put this additional question to him: — “If you were sworn in this case as a juror, would you at the time you were sworn, put aside any opinion you have, and after being sworn, rely upon the testimony and the charge of the court in making up your verdict?” Answer: — “ Yes, your Honor.” The challenge was thereupon overruled, and counsel for defendant excepted.
From what has been stated, (and we have given the materia] questions and answers), it will be seen that there was no attempt whatever, either upon the part of the court or of counsel, to ascertain the grounds of the opinion of the juror as to the question of the guilt or innocence of the defendant. He was asked by the counsel for the State, if he had read of the case last March, and he answered in the affirmative. This is the only allusion to the matter during the whole of the examination. For all that appeared, he might have had frequent conversations on the subject with the prosecuting witness, or other witnesses of the State, or the defer dant. He might have read what purported to be the sworn testimony. He may have had personal knowledge of many of the facts in the case, and his opinion formed in this way might be much more firmly rooted in bis mind than if formed simply from a casual remark of some one who did not profess to have personal knowledge of the case or some statement made in a newspaper, giving simply rumors or suspicions afloat in the public mind. It would seem that the manifest purpose and intent of the statute, in that part of it which explicitly requires the court, when a juror says that he has formed or expressed an opinion, to examine him as to the grounds of his opinion was, that the court might then ascertain how it was that the juror reached his conclusion- — whether it was on mere rumor and hearsay, and not founded on any substantial basis, or in some other way, and in such manner as would render it difficult for any man, *212 however honest he might be, to lay aside the opinion before formed, particularly if the facts testified to before the jury, should substantially agree with what be had before heard, and on which his opinion had been founded. In this case, too, the juror testified that he had expressed an opinion. How often,and how positively and under what circumstances? These are certainly most material matters in tie consideration of the question as to whether the man will be or can be an impartial juror. But none of these matters are referred to, notwithstanding the explicit direction of the statute. Under the circumstances of the case, and the admitted fact that this juror had an opinion as to the guilt or innocence of the defendant, and the very great doubt which arises on his own statement, meager as it is, whether he could hear the case impartially, we are of the opinion that the action of the trial court in overruling the challenge, was erroneous and prejudicial. Instead, too,of limiting the examination of the juror by counsel for the defendant, as was done in his effort to ascertain the weight of this opinion (not perhaps in a very satisfactory manner), the effort of the court should have been to have this clearly appear, and that thus the case should have been submitted to the decision of twelve men, impartial as between the parties. The importance of this is so clearly and forcibly stated by Judge Mcllvain, in his opinion in the case of Palmer v. The State, 42 Ohio St., 596, that we only need to refer to it, and we see nothing in the case of Goins v. The State, 46 Ohio St., 457, that conflicts with it. See also McCarthy v. The State, 5 C. C. 630.
It is urged that the court erred in admitting in evidence, over the objection and exception of the counsel for defendant, testimony as to a conversation by telephone between Mr. Frazer, the prosecuting witness in this case, and his agent, or the agent of the company which he represented, Mr. Crocker. This conversation was to the effect that Crocker had said to Frazer over the telephone, in the ab *213 sence of Prendergast and Limerick, (who were jointly indicted, though only the latter was on trial), that he was afraid that he was going to be arrested; that there was some trouble found with the tablets; that they were found short, and that he wanted Mr. Frazer to come to Cincinnati to protect him; that Dr. Prendergast had told him that something was the matter with the tablets,and that he (Crocker) was to be arrested.
We see no ground whatever upon which such evidence was admissible as against Limerick. On the overruling of the motion made by defendant’s counsel to exclude it, the court said: — “On the understanding that it is to be supplemented with other testimony that a conspiracy existed that will make it competent, I will overrule the motion; otherwise, if it is not made competent by subsequent testimony, the motion will at the proper time be granted.” But suppose that there should be evidence afterwards introduced, which, in the opinion of the court, showed some conspiracy between Prendergast and Limerick to black-mail this prosecuting witness,how would that make a conversation between Frazer and some one else in the absence of Limerick or Prendergast, and without their knowledge, admissible against either? It was wholly incompetent. It is claimed by counsel for the State, that it was wholly immaterial,and therefore not prejudicial — ■ but if so, why urge its admission? But we think it was offering proof as to a material matter — the statement of Dr. Prendergast as to one of the facts involved in the case, and therefore prejudicial. Even if the conspiracy were shown by other valid evidence, this statement was not competent even against Prendergast had he been on trial, and even less so as to Limerick, if such could be the case — and, as wo understand, this evidence was never overruled by the court, but was allowed to stand.
It is further urged by the counsel for the plaintiff in error, that the trial court erred in the admission of testimony tend *214 ing to show the guilt of Dr. Prendergast (jointly indicted with Limerick) of the crime charged against both of them, not only by proving the facts in the case, but by proof of many conversations had by other persons with Prendergast, in the absence of Limerick, and without at all connecting him therewith. That all such evidence was admitted by the court without any suggestion upon the part of the counsel for the State, that it was the claim of the State that there-was a-conspiracy between Prendergast and Limerick to commit this offense, or that it was the purpose of the State to show this, and therefore to show that what was said by one of the conspirators in the execution of the common scheme and purpose, was competent evidence against the other. There is no question from the record but that such was the fact— that is, that such conversations of different persons with Prendergast were allowed to be given toa very great extent, before there was any proof tending to show any conspiracy between him and Limerick to carry out the alleged scheme, and this over and against the objecticn and exception of counsel for defendant, and so far as the record discloses, without any assurance on the part of counsel fo.r the State that proof of the conspiracy would be supplied. Witho-ul such additional proof, it was clearly incompetent to admit such evidence. But it is claimed by the State that it was afterwards introduced,and that it thus became entirely competent; and it is perhaps true that such additional evidence was offered by the State, which,if it had been first introduced, would have justified the court in holding that a prima facie case of conspiracy between the two had been made, and in submitting the question to the jury, under appropriate instructions,as to whether such conspiracy had been proved to their satisfaction; and if so, that the evidence as to the conversations with, and the declarations of Prendergast, could properly be considered by them in this case.
But it is urged by the counsel for the defendant, that un *215 ■til this conspiracy was thus shown, the other evidence should not have been received,particularly so without any assurance on the part of counsel for the State, that the evidence of ■conspiracy would be introduced. The question thus raised, is an interesting and important one, and as to which it is probable that the authorities are somewhat in conflict. It ■must be conceded that the order in which testimony shall be introduced, must of necessity be largely in the discretion ■of the trial court. But this should be a legal and proper ■discretion, and such course should be pursued as should not prejudice the rights of the parties. It is clear that it would be most unjust to the rights of a defendant on trial for a .grave offense, to allow evidence of the guilt of other parties to be shown without some evidence to connect him with such ■parties, or make him responsible in some way for their con■duct,and great care should be exercised by the court in this regard. So far as we can see from our necessarily hasty examination of this question, the language used by courts in passing upon this question, is to the effect that “acts or declarations of a conspirator may, after sufficient proof of conspiracy, be given in evidence to charge his fellow conspirator. ” Patton v. The State, 6 Ohio, 467; Clawson v. The State, 14 Ohio St., 234; Roberts v. Briscoe, 1 C. C., 578; while in Goins v. The State, 46 Ohio St., 457, 463, it is said by Judge Bradbury, that “much latitude is necessarily left to the trial court in determining whether or not, there has been introduced sufficient prima facie proof of a conspiracy, to admit evidence of the acts and declarations of one ■claimed to be a co-conspirator with the defendant on trial;” yet there is no suggestion that the former holdings of the •supreme court referred to are not correct.
Such also seems to be the clear holding of the writers on the law of evidence. In 1st Greenleaf, sec. Ill, under the heading of “declarations of conspirators,” it is said: “The same principles apply to the acts and declarations of one of *216 a company of conspirators, in regard to the common design as affecting his fellows. Here a foundation must first be laid by proof sufficient in the opinion of the judge to establish, prima facie, the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact.” In 1st Wharton on Evidence, sec. 1205, the author says: “The least degree of concert or collusion between parties to an illegal transaction, makes the act of one the act of all. But the conspiracy must be first shown.” And Stephen in his Digest of the Law of Evidence, art. 4, with his usual clearness, states the law thus:
“When two or more persons conspire together to commit, any offense or actionable wrong, everything said, done, or written by any one of them in the execution or furtherance of their common purpose, is deemed to be so said, done or written by every one, and is a relevant fact as against each of them. * * * “Evidence of acts relevant under this article, may not be given until the judge is satisfied that, apart from them,there are prima facie grounds for believing in the existence of the conspiracy.”
As has been suggested, authorities may be found which to some degree would limit this doctrine of the law, or hold that while it is the better practice that such evidence should not be allowed in the first instance,yet,if the evidence after-wards introduced, and the whole evidence in the case,shows the conspiracy, the mistake in admitting it would be immaterial and not prejudicial. To this effect is 17 Kansas, 298; and some seeming sanction to the practice adopted in this case, is found for extreme cases in 122 111., page 8. But we are of the opinion that the great weight of authority is for the rule adopted in our own state,and that evidence of the acts or declarations of persons alleged to be co-conspirators with the defendant on trial, can not properly be received against him,“until the judge is satisfied that,apart from them, there are prima facie grounds for believing in the existence of the conspiracy.”
*217 Exceptions were taken by the counsel for the defendant, to the charge of the court to the jury. The court,after stating the substance of the indictment against Pendergast and Limerick, and that Limerick alone was on trial, said:
“In order to find the defendant guilty,you must be satisfied beyond a reasonable doubt, that on or about the 13th of March, 1897,in the county of Hamilton,and state of Ohio,the defendant unlawfully and knowingly, did verbally accuse Horatio N. Frazer of a crime, punishable by the law of the state of Ohio; that is,the crime of selling within said county of Hamilton and state of Ohio, a certain drug, to-wit: medical tablets, the strength of which medical tablets fell below the professed standard under which they were then and there sold, and he did this with the intent to extort money from the said Horatio N. Frazer.” * * *.
“There are three ways in which the defendant, O. N. Limerick, can be guilty of unlawfully and knowingly, verbally accusing Horatio N. Frazer of a crime punishable by the laws of the state of Ohio, for the purpose of extorting money or other things of value from him, the said Horatio N. Frazer, provided the testimony shows one or the other of them.
“First — By O. V. Limmerick himself, accusing Horatio N. Frazer of a crime punishable by the laws of the state of Ohio, for the purpose of extorting money or other thing of value from him.
“Second — ■ By entering into a conspiracy with one or more persons to verbally accuse Horatio N, Frazer of a crime punishable by the law of the state of Ohio, for the purpose of extorting from him, the said Horace N. Frazer,money or other thing of value.
“Third — By aiding and abetting him to verbally accuse Horatio N. Frazer of a crime punishable by ihe laws of the state of Ohio, for the purpose of extorting money or other thing of value from the said Horatio N. Frazer.”
It is evident from this statement of the trial judge, that he was stating to the jury three different hypotheses, either of which,if shown to the satisfaction of the jury, should result in the conviction of this defendant,and to the statement *218 •of the second and third of those hypotheses, the counsel for the defendant at the time excepted.
It may be stated here, that in each of these three statements to the jury, there is no reference to the particular •charge or accusation which the indictment avers was threatened to be made against the said Frazer, and the same is •true as to all other places in the indictment where this charge ■is spoken of,except in the paragraph hereinbefore first quoted in full, where it is referred to in the language of the indictment. In all the other places,it is stated that if the accusation was,that if he had accused Frazer,or had entered into a conspiracy to accuse him of a crime, (that is, any crime), punishable by the laws of the state of Ohio, he might be committed under this indictment. This can not be so — the evidence must conform to the indictment, and the court should have specified that crime charged in the indictment as the •one of which Frazer was accused. But we think, the second of these statements was radically wrong in another respect. Proof that the defendant Limerick had entered into a conspiracy with one or more persons, to verbally accuse Frazer of •a crime, for the purpose of extorting money from him, would not'of itself justify his conviction under the indictment; something more than this was essential — there must be an actual accusation. This was alleged in the indictment, and must be proved by the State before the defendant could prop•erly be convicted. The charge is not that he entered into a •conspiracy to do it, but that it was in fact done., The defendant might have entered into such a conspiracy, but before anything was done to carry it out, have wholly with■drawn from it,and taken no step in the execution of the conspiracy. Surely, there was a locus penitentiae for him, if he choose to avail himself of it.
We think the exception taken to the third statement of the court on the subject of aiding and abetting, is not well ■taken. It was held in Hanoff v. The State, 37 Ohio St., *219 179, that "sec. 0804, Kev. Stat., authorizes the prosecution, as well as the punishment of aiders and abetters, as principal offenders. Hence, one indieted as a principal may be, convicted on proof that he was an aider and abetter.”
Michie & Glare, Attorneys for Plaintiff in Error.
Prosecutiny Attorney, for Defendant in Error.
Other questions were presented in the argument of the, case, but in our opinion, it is unnecessary that we should, discuss or allude to them.
For the reasons stated, the judgment will be reversed,and the cause remanded to the court of common pleas for further proceedings.